EEE, J.
The jurisdiction of this court in this case is, I think, clear and unquestionable. Assuming that the matter in controversy is merely pecuniary, it is not confined to the amount claimed by the ap-pellee but embraces also the amounts claimed by the Building fund company and for which as they allege thej’’ are entitled to priority of payment out of the proceeds of the subject. These alone exceed the sum necessary to give the jurisdiction.
There is as little doubt, I think, of the jurisdiction of the court of equity in the matter of the bill. Its jurisdiction is denied by the counsel for the appellant upon his construction of our act creating the “mechanic’s lien,” Code, ch. 119, | 2, p. 310; and if his construction were correct, there would be grave doubt of the right of a party claiming as assignee of such a contract. as that which is the foundation of the appellee’s demand, to come into equity to obtain payment of such of the installments as had become due merely upon the ground that he was assignee. But I do not think the construction contended for is correct. The act first declares that there shall be a Hen for the money agreed to be paid upon a contract for erecting or repairing any building, &c., from the time that the same is duly admitted to record, and then provides that “the said lien shall not be in force more than six months from the time when the money or the last installment of the money, to be paid under such contract, shall become payable, unless a suit in equity to enforce the lien shall have been commenced within *the said six months. ” The object of this provision was to prescribe a limitation to suits to enforce such a lien by specifying a period after which they might not be brought but. not one before which they might not be commenced. It intended to give the mechanic the right to assert the Hen for all the installments whenever due (where the contract price was paj-able in installments) provided he commenced his suit before the expiration of the six months after the last installment became due, but not to prevent him from proceeding for previous installments before the last became payable. His right to sue for these depends on general principles and is not restricted by the act; and no one has ever questioned that a party who has a debt due by bond payable in installments and secured by a lien on real estate may maintain covenant, or file his bill to enforce his lien as soon as any one installment becomes payable, whatever may be the doubt as to the right to maintain debt until all of the installments shall have become due. And *758 where such a bill has been filed another installment shall become due pending the suit, the uniform practice, never questioned so far as X know, has been to decree payment ■of all the installments that shall have fallen ■due up to the time of the decree, and if there be any to become due thereafter to provide that the party may come in on the foot df the decree to obtain satisfaction of the same out of the surplus proceeds, if any there should prove to be. To this practice I can see no well founded objection. It would be useless and occasion unnecessary costs and delay to require the party to commence a new suit or even file a supplemental bill whenever another installment shall fall due; and the defendant in making his de-fence as to the first installment may if he please make it to any or all of the others or ma}7 obtain leave to do so in proper time afterwards.
*1 have examined the cases cited by the counsel on this point but have seen in them no reason to doubt the correctness of my construction of the statute. The cases apparently most resembling this case are those of Kinney v. Hudnut, 2 Scamm. R. 472; Pryor v. White, 16 B. Mon. R. 605; Bartlett v. Kingan, 7 Harris Penn. R. 341; McClallan v. Smith, 11 Cush. R. 238; and Jones v. Alexander, 10 Smedes & Marsh. R. 627. But they were upon statutes differing in some respects from ours, and they do not touch the particular point made here. The case of Kinney v. Hudnut merely decides that under the statute of Illinois, there can be no cause of action until the contract is completed and payment is due. In that case there was no special contract as to the time when the work was to be paid for. In Bartlett v. Kingan, the claim was for work done and bricks furnished on an entire contract for the erection of a house, and it was held that under the Pennsylvania statute, the six months’ limitation commenced to run from the completion of the contract, and that the party was in time if his claim was filed within that period after the last quantity of bricks was furnished and laid. Here the demand was for an entire sum due in whole upon the completion of the contract. In Pryor v. White, it appears that under the . Kentucky statute the lien is to be enforced by bill filed within one year from the completion of the work, and that the party.in that case had taken notes for the work some of which would not fall due until after the year: and it was held that as he had thus by his voluntary act placed himself in a position which rendered him unable to bring a suit to enforce the lien as to them within the year, he was to be regarded as having virtually waived it. Jones v. Alexander was a case under the Mississippi statute which required the suit to be brought within twelve months from the time the money was to be paid in order to secure the *lien. The plaintiff had furnished lumber to the defendant for a house in 1844, the proper time of payment for which was the 1st of January 1845; and in May 1845 he had taken the defendant’s note for the amount payable one day after date, but the petition- to enforce the lien was not filed until April 1846. It was held that the party could not deviate from the original contract and extend the time when according to it the lien would attach, and as the petition had not been filed within twelve month from the time when payment was to be made, it could not be maintained. In McClallan v. Smith, which was a case under the Massachusetts statute, the contract was to do the work during the season ensuring its date, which was the 30th of May 1845; the contractor did part of the work in 1845 but did not complete it until May 1846, and the property having been conveyed to others, he sought to enforce his lien against them. It was held that although he would have been entitled to compensation for the work he did during the season of 1845, because his failure to complete the building was occasioned not by his default but by that of the owner in furnishing materials, and to have his lien enforced to that extent if he had commenced his suit in due time; j7et as he had not filed his petition within six months from the time when the amount due for the work done in 1845 would have been payable according to an equitable adjustment under the contract, his lien was lost and the land discharged of the incumbrance: the court being of opinion that the work done after the season in 1845 ivas to be regarded as done under a subsequent parol agreement, which did not continue the former lien nor create a new one.
Thus it shall be perceived, as I think, that' these cases all differ in their distinctive features from our case and give but little aid in settling the true construction of our act. Ñor have I seen any sufficient *reason for applying a different rule to the lien which it creates from that which obtains in other cases of lien for money payable in installments. I think the party could come into equity to enforce the lien as soon as either installment became due, and that when he did so, the court could properly make provision for the others. In this view it is unnecessary to enter into the doctrine of assignments for the purpose of determining how far without such Hen, the appellee could have maintained himself in that court upon the footing of his assignment alone.
But the counsel for the appellants goes still further and insists that there never was a lien at all because the contract was not acknowledged by Iaege and admitted to record for the purpose of creating a lien, nor did he know that such would be the effect. Or if it must be held that there is a lien, that it is not assignable and consequently the appellee has no footing in court to enforce it for his benefit.
Nothing is said in the act about the intention with which the contract is admitted to record, nor is any certificate required of the purpose for which it may be acknowledged or recorded. The appellee, it appears, who was to advance the money refused to *759 do so unless the contract was recorded, and to overcome this difficulty, laege went to the clerk’s office and acknowledged it for that purpose. No fraud or imposition is alleged to have been practiced upon him, and his ignorance of the legal consequences of recording the contract cannot prevent the lien from having effect. Otherwise it would be a fraud upon the ajipellee who has advanced his money upon the faith of the rights thereby acquired. I think it clear therefore that the party must be deemed when he acknowledged the contract and assented to its being recorded, to have known that it would create a lien or at least that *he was content to abide by all the legal effects and legitimate consequences of its being so recorded.
Nor do I think that the position taken by the counsel that such a lien is not assignable can be maintained. By the act of 1819 it is declared that assignments of all bonds, bills and promissory notes and other writings obligatory whatsoever, shall be valid; and that an assignee of any such, may thereupon maintain any action in his own name which the original obligee or payee might have brought. 1 Rev. Code 1819, p. 484, § 5. In the Code of 1849, the declaration that such assignments shall be valid is omitted, and it is simply provided that the assignee of any bond, note, or writing not negotiable, may maintain thereupon any action in his own name which the original obligee or payee might have brought; the revisors, I presume, supposing that to give the action to the assignee in his own name sufficiently affirmed the validity of the assignment without any express declaration to that effect. Code, ch. 144, $ 14, p. S83. Now I see no reason why the assignee in this case could not maintain an action at law in his own name upon this contract. It seems to me to be fully embraced by the terms of description both in the Code of 1819 and that of 1849. But if this may be questioned, no reason is shown why it may not be regarded as assignable for value in equity. It is said and authorities have been cited to show, that such a statute is to be construed strictly, and it is contended that it is intended exclusively for the benefit of the builder and material-man. No case has been cited affirming that a contract under such a statute cannot be assigned. There is nothing in public policy or in the language or the policy of our act to forbid it; and if the statute be exclusively for the benefit of the builder and material-man it would certainly impair the value of his Hen to declare *it non-assignable. It might prejudice him by depriving him of credit which he might otherwise obtain to prosecute his undertaking, and thus also operate a disadvantage to the owner. Whilst the latter can in no respect be injured by the assignment, because the assignee takes the obligation subject to the same equity to which it was subject in the hands of the obligee and must allow all just discounts not only against himself but against the assignor before notice of the assignment.
[ I can perceive no reason for distinguishing between contracts of this character and other choses in action ex contractu in respect of the right to assign them. And it cannot be doubted that when the assignee takes the contract, he acquires with it the lien as a necessary incident.
I proceed next to consider the complaint made of the amount for which the decree was rendered.
By the contract the work about the house was to be executed in a workmanlike manner, whilst the proofs in the cause tend strongly to show that it was in fact executed in a very defective and unworkmanlike manner. It is proven that the doors were very much cracked (one of the witnesses says “cracked to pieces”) and that thej' were too small from shrinking, were made of green or wet timber and that numerous holes were found in them; that the staircase had given way and the steps had sunk from a half to three-fourths of an inch below the skirting; that the wash-boards had left the floors or the floors had sunk from half an inch to an inch; that the mantles were badly executed and much shrunken; that the plastering was not well done, that the weather-boarding was very much split and shrunken for want of a sufficient lap and that the piazza in the rear was badly and improperly constructed. All the witnesses examined upon the subject agreed that the materials must have been green *or unseasoned and that the work was not done in a workmanlike manner but was very defective; and they all think it was worth much less than was to be paid for it if executed in the manner required by the contract. It is true it was provided that the work when completed was to be valued by referees and the price was to be fixed by their valuation. But such a valuation would of necessity be based upon the condition in which the work appeared at the time it should be made, and it coukl not have been intended to deprive the party of the right to compensation for material defects in the work that were not discoverable at the time of the valuation but only became apparent afterwards. And as numerous and marked defects were subsequently disclosed the award of the referees as to the value of the work in its apparent condition at the time should not be held conclusive. It appears that the valuation was made by the referees immediately after the completion of the house in February 1853; the work was then just finished, freshly painted and plastered; every thing appeared right except perhaps the defective manner of the construction of the piazza in the rear, and it was not until after the materials used had become seasoned during the ensuing summer and fall that their defective character was exposed in the numerous flaws and defects which became strikingly apparent in various parts of the building, and thus invited attention as well to the materials themselves as to the manner in which they had been wrought.
If the price of the work had been fixed in the contract and the party had paid it im *760 mediately on its completion, or if he had been sued and judgment recovered for the amount before the faulty and defective workmanship had discovered itself, it will scarcely be said that he would have been thereby deprived of the benefit of his contract for work done in a workmanlike *manner, and of compensation for material defects which were subsequently disclosed. Nor can I think that the measurement and valuation made by the referees should under the circumstances of this case, have any greater effect.
The case of Kidwell v. The Balt. & Ohio R. R. Co., 11 Gratt. 676, has been cited by the counsel for the appellee upon this point; but it will be found X think upon examination to decide nothing incompatible with the conclusion I have arrived at in this Gase. That was a bill filed to obtain compensation for extra work and deficiencies in estimates of the value of work done, upon certain contracts for the construction of .bridges on the line of the company’s road. These contracts provided for monthly estimates to be made of the quantity, character and value of the work by an engineer designated, and when the work should be fully completed and accepted by the engineer, for a final estimate of the same, when the balance appearing to be due was to be paid to the contractor upon his executing, a re-léase of all demands against the company. There was a further provision that these estimates should be conclusive between the parties unless altered by the principal engineer to whom power was reserved to review the same .and make alterations if he should choose to .exercise it. The complaint on this branch of the case was that the estimates had all been made upon an improper and erroneous construction of the contracts, to the great prejudice of the contractor, and that he should not be bound by th.em. on that account and also because of fraud and mistake imputed to the officers in effecting the contracts and making the estimates. The court held that neither fraud nor a mistake was made out in proof, and that in the absence of both, the final estimate of the engineer was conclusive between the parties. It was also held that ■ , whatever might be the true construction *of the contracts yet as the estimates had been made upon a particular construction of which the contractor was fully informed at the time and had received the monthly estimates based upon it without objection, he must be held to have acquiesced in that construction and to be bound by it; and that if he might have refused to abide by the final estimate, yet having made no objection to the engineer’s proceeding to make it, and having attended upon him for that purpose and submitted his charges for the work done, he was concluded by the engineer’s action. In this case the very matters sought to be controverted had been formally and directly submitted to and adjudicated by the referee, all the elements which should enter into his estimate were perfectly known at the time and the contractor by his acts and declarations, had acquiesced in the principles upon which he had attained his results. I can perceive nothing in this decision which touches the particular question in the case in judgment.
It is contended on behalf of the Building-fund company that they were entitled to priority of payment out of the proceeds of the sale of the property, both as to the one hundred and twenty dollars advanced to Iaege before the building contract was recorded, and the four hundred and sixty-one dollars advanced and paid to the appellee afterwards; and on behalf of both the appellants it is insisted that the Circuit court should have so adjudicated before it directed a sale of the property.
The counsel for the appellee does not contest the priority claimed for the one hundred and twenty dollars, and he contends' that upon the face of the commissioner’s report and the decree of which it is the basis, this is impliedly conceded and should be regarded as sufficiently recognized: but he does contest the priority claimed as to the four hundred and sixty-one dollars paid after the building contract was recorded, ";iand he argues that as the monejr arising from that sale was not disposed of by the decree but directed to be deposited in bank to the credit of the cause, the court could afterwards decide upon the priorities .and thus no one would be prejudiced.-
It is a well settled rule that where there are conflicting claims to priority of payment out of the proceeds of land about to be sold to satisfy the liens upon it, the court in order to prevent the danger of sacrificing the property by discouraging the creditors from bidding as they probably might if their right to satisfaction of their debts and the order in which they were to be paid out of the property, were previously ascertained, should declare the order of payment before it decrees the sale to be made. Cole’s adm’r v. McRae, 6 Rand. 644; Buchanan v. Clark, &c., 10 Gratt. 164. It is therefore not sufficient that the court should direct the fund ,to be paid into court and should declare the priorities afterwards. The purpose for which it is done requires that it should precede the sale.
I do not see any thing in the report of the commissioner or the decree of the court confirming it which amounts to a declaration or recognition of the priority of the Building fund company even as to the one hundred and twenty dollars. The report simply states the facts, and the decree, after confirming the report, directs that if the balance stated to be due the appellee be not paid within ninety days with interest and costs, the property should be sold and the proceeds after paying the costs and expenses of the sale, paid into bank to the credit of the cause. Nothing- is said in it in relation to either claim of the Building fund company, and the failure to adjudicate as to the order of payment is, I think, a material error in the decree.
As to the Building fund company’s right to priority as to the one hundred and *761 twenty dollars, no objection ‘"is made, nor can its right to such priority as to the four hundred, and sixty-one dollars, be successfully contested. When the company advanced the one hundred and twenty dollars to Iaege for and on account of the redemption of a share held by him in the stock of the company, they- took from him a deed of trust upon the properly to secure the payment of that stun as well as of any other sum or sums they might thereafter advance on account of the redemption of other shares. This arrangement was fully within the terms of the charter and the by-laws of the company, and was the mode in which the main object of the association was carried into effect, and it was well known to Martin, Warthen and the appellee at the time the contract for building the house, was executed and when the same was assigned to the appellee. The deed of trust was duly admitted to record before the contract for building was entered into, and when it was made and assigned to the ap-pellee. it was perfectly well known to all these parties that the principal part of the funds to be paid for the work was to come from the Building fund company and to be advanced by it on the security of the deed of trust which they had taken; and accordingly they' required Iaege by the contract to give good security for the excess of the cost of the building above the five hundred dollars expected from the company". And when the money was paid to the apjseliee, lie knew that it was paid by the company on the security of the deed of trust, and with the understanding on 1heir part that they were to be indemnified in preference to any' other claimant, and it was accepted and received by him in payment for materials furnished and work done upon the very" property without objection and without protest as to the justness of the expectation with which it was paid. To permit the appellee now to repudiate his '"‘recognition of the priority of the company’s claim would operate a virtual fraud upon them and would be most unjust and inequitable.
I Ihiuk therefore the Building fund company is entitled to priority in payment of She proceeds of the |>roperiy as well of the four hundred and sixty-one dollars advanced in redemption of stock as of the one hundred and twenty dollars advanced in that way at the time the deed of trust was executed.
There are two other points which perhaps should be briefly" noticed.
An exception was taken to the paper offered as evidence of the measurement and valuation of the work by the referees' because it purported to be a copy? and not the original. This exception is without date au.l it does not appear when it was in fact taken. But the paper was filed as an exhi bit with the bill and although the answers are very full and elaborate no objection is taken to the paper on that account nor is any call made in them for the original. The paper was also received by. the commissioner as evidence, there was no call made for the production of the original before him nor does he report that any objection was made to the paper because it was but a copy. The exception therefore either came too late or must be regarded as having been waived by the parties, and it was properly disregarded by the Circuit court.
The remaining point relates to the contingent dower interest of the wife of the appellant Iaege in the property. It is said that this was not affected by the mechanic’s lien, and that the court therefore should not have sold the entire estate, but only the interest of Iaege. That the mechanic’s lien does not override the dower interest of the wife is very clear, and if any authority to the point were needed, it would be found in Shaeffer v. Weed, 3 Gilm. 511. But Mrs. Iaege had united with her husband in the deed of trust for the ‘"benefit of the Building fund company, and if a sale takes place it must be to raise the amount due the company as well as lha l due to the appellee. It would be proper therefore that the property should be sold out and out, but as the wife has a contingent dower interest in the equity of redemption and being a party to the cause, is to be bound by" the decree, the court should make a proper provision to compensate that interest out of the surplus proceeds of sale, if any, after satisfying the amounts due the Building fund company before any j>art of the same shall be paid over to the appellee.
I am of opinion to reverse the decree and remand the cause for further proceedings.